2021 IL App (1st) 190223-U
No. 1-19-0223
Order filed August 2, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 09 CR 14586 |
| | ) | |
| FRANCISCO AKINS, | ) | Honorable |
| | ) | Michael B. McHale, |
| Petitioner-Appellant. | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's judgment denying Akins postconviction relief after a third-stage evidentiary hearing where the court's decision was not against the manifest weight of the evidence and where postconviction counsel provided reasonable assistance.

¶ 2    The trial court denied Franciso Akins's petition for postconviction relief after a third-stage evidentiary hearing. Akins alleged that before his trial for first degree murder, his counsel was ineffective for failing to inform him of a plea offer for second degree murder. As a result, Akins

claimed he suffered prejudice because he would have taken the plea and received a sentence lower than the 30-years imposed after a jury found him guilty. The trial court, however, found the State never tendered a plea for second degree murder. Akins argues that the trial court's rejection of his argument was improper.

¶ 3 Alternatively, Akins argues his postconviction counsel provided unreasonable assistance. Though counsel attached the affidavits of Akins's girlfriend and mother, he did not call either of them during the evidentiary hearing. According to Akins, their testimony would have corroborated his and could have led to a different outcome.

¶ 4 We reject both of Akins's arguments and affirm. Akins cannot show ineffectiveness without showing the State made an offer for second degree, and we cannot say the trial court manifestly erred in finding the State never made the offer. Akins's postconviction counsel adequately presented Akins's claims with evidence, cross-examination, and argument; even if counsel's performance was imperfect, it was not unreasonable.

¶ 5                                    Background

¶ 6 A jury found Francisco Akins guilty of first degree murder, and the trial court sentenced him to 30 years' imprisonment. Akins filed a *pro se* postconviction petition alleging, among other claims, ineffective assistance of trial counsel for depriving him of the opportunity to plead guilty to second degree murder. In the petition, Akins alleged that before his first trial appearance, his trial attorney came to the "bullpen" and told him that Assistant State's Attorney Geraldine D'Souza had asked if Akins would consider pleading guilty to a lesser charge of second degree murder. Akins maintained his innocence, but his trial counsel told him he would tell D'Souza that Akins wanted to discuss the matter with his family. Akins discussed the plea with his family and had his

girlfriend independently research second degree murder sentencing. Akins and his family decided together that Akins should accept the plea.

¶ 7    At the next court date, Akins's trial attorney again came to the "bullpen," and Akins told him he wanted to accept the plea. He explained what his girlfriend had found online about the sentencing. His trial counsel became "enraged" and told him he would never get the minimum sentence and stormed off. At the next court date, Akins again told his trial counsel that he wanted to accept the plea deal, but his trial counsel said that D'Souza had been reassigned and the offer was no longer available. Akins claimed his trial counsel's ineffective assistance caused him to lose his plea bargain when it was available.

¶ 8    The trial court held an evidentiary hearing on Akins's postconviction claim. Akins testified consistently with the facts alleged in his petition. He added that ASA Greg Ahern replaced D'Souza, and Ahern offered to allow him to plead guilty to first degree murder in exchange for a 20-year sentence on two occasions before trial. Akins refused and opted for a jury trial.

¶ 9    D'Souza was unavailable to testify.  Ahern testified that nobody from his office made an offer for a plea to second degree murder. Ahern spoke with an unidentified colleague who told Ahern that no offer had been tendered before the 20-year offer he had made for a plea to first degree murder. Ahern consulted the State's file, called a "blue back," which confirmed that the State had not tendered a previous offer. According to Ahern, ASAs registered all offers for a plea in the "blue back," though Ahern acknowledged he failed to register in the file his eventual offer for a plea to first degree murder.

¶ 10    Akins's trial counsel testified that he similarly did not recall an offer for second degree murder, and, in any event, the fact pattern would not have warranted it. On cross-examination, he

said he had probably asked for a plea of second degree murder at some point because he always wants the best deal for his clients. Also, although he lacked the memory of a second degree offer, he would have advised Akins to take that plea deal if offered.

¶ 11    Akins attached affidavits to his postconviction petition. His girlfriend and his mother both claimed that the State had tendered an offer for second degree murder. Lizandria Borras, Akins's girlfriend, alleged that she had personally discussed the second degree offer with trial counsel. (Trial counsel remembered speaking to Akins's family throughout the case.) Postconviction counsel neither called Borras or others to testify during the third stage hearing nor mentioned the affidavits during argument.

¶ 12    The trial court found Akins's testimony not credible and credited the testimony of both Ahern and trial counsel. The court concluded that the State never offered a plea to second degree murder and dismissed the petition. The court held that trial counsel could not have been ineffective as the State's Attorney's Office never offered a plea.

¶ 13                                    Analysis

¶ 14    Akins argues that the trial court manifestly erred by finding the State never tendered an offer for second degree murder. Akins asserts that the court improperly relied on Ahern's testimony, where he lacked personal knowledge of offers tendered before entering the case. The State responds that the finding it never made an offer was not manifestly erroneous, and Akins failed to establish otherwise.

¶ 15                      *Ineffective Assistance of Trial Counsel*

¶ 16    The Post-Conviction Hearing Act provides a method for criminal defendants to assert that their convictions involved a substantial denial of their constitutional rights. *People v. Petrenko*,

237 Ill. 2d 490, 495-96 (2010). Proceedings under the Act occur in three stages. *People v. Carter*, 2017 IL App (1st) 151297, ¶ 125. The trial court reviews the *pro se* petition at the first stage and dismisses it if the claims are frivolous and patently without merit. *Id.* If the trial court allows the petition to proceed to the second stage, the trial court appoints counsel to represent the defendant. *Id.* at ¶ 126. Appointed counsel can amend the petition; the State files a motion to dismiss or answers. *Id.* To advance to a third stage, "a petitioner must make a 'substantial showing,' which can be accomplished by relying on the record in the case or by supplying supporting affidavits." *Id.* at ¶ 127 (quoting *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). The trial court receives affidavits, depositions, oral testimony, or other evidence. *Carter*, 2017 IL App (1st) at ¶ 129.

¶ 17    At the third stage evidentiary hearing, the trial court serves as the fact finder and makes credibility determinations. *Id.* at ¶ 132. We will not reverse unless the trial court's resolution of the petitioner's claims is manifestly erroneous. *Id.* Manifest error refers to a "clearly evident, plain, and indisputable" error. *People v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 18    The Sixth Amendment affords criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 680 (1984). Akins must show that counsel provided deficient performance, and the error resulted in prejudice. *Id.* at 682. The right to effective counsel also extends to the plea bargain context and must pass the two-pronged test set out in *Strickland*. *E.g., People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 19    To show prejudice under *Strickland* in a plea bargain context, Akins must prove: (i) he would have accepted the State's plea offer had counsel told him about it; (ii) a reasonable probability existed that the plea would have been entered without prosecution canceling it or the

trial court refusing to accept it; and (iii) a reasonable probability existed that the result of the criminal process would have been more favorable because of the plea. *Id.*, ¶ 19.

¶ 20    Here, the State does not dispute any of these factors and argues that Akins cannot show prejudice because he cannot prove the State ever offered the plea. Akins insists that before trial, the State offered the plea, and the State failed to meet its burden of proving no offer was made because the State (i) failed to call D'Souza as a witness, (ii) failed to present the "blue back," and (iii) called witnesses with unreliable, second-hand knowledge concerning whether the offer had been made.

¶ 21    Ahern, who was not present during alleged plea negotiations between D'Souza and Akins, testified that a colleague informed him that an offer of second degree murder was never tendered. Ahern also said the "blue back" had no mention of the offer. Thus, Ahern would have first-hand knowledge of the "blue back." We acknowledge an apparent inconsistency in Ahern's testimony: he explained that an offer made by the office would be registered on the "blue back," yet, he admitted he did not register his own offer on the "blue back." Even if his contradiction causes us to doubt his testimony, it is not a basis on which we can reverse. See, *e.g., People v. Irby*, 237 Ill. App. 3d 38, 60-61 (trial court can "accept or reject as much of the witness' testimony as it pleased").

¶ 22    Akins also asserts that the information from the colleague and about the blue back constitutes unreliable hearsay. But the rules of evidence do not apply in "postconviction hearings." Ill. R. Evid. 1101(b)(3) (eff. Sept. 17, 2019). While D'Souza handled the case, the record shows that the State's file made no mention of Akins seeking a plea deal or the prosecution tendering an

offer. Additionally, trial counsel had first-hand knowledge as any offer made would have been made to him.

¶ 23     The only indication of a plea is Akins's testimony and an affidavit from his girlfriend. The determination then becomes a credibility contest between Akins and the State's witnesses. See *People v. Custer*, 2020 IL App (3d) 160202-B, ¶ 35 (trial court did not manifestly err where, after "reviewing the evidence on both sides of this credibility determination *** the opposite conclusion is not clearly apparent."). The trial court found Ahern and trial counsel more credible than Akins. Nothing indicates this finding as clearly, plainly, and indisputably erroneous, and we affirm the trial court's decision to reject Akins's claim of ineffective assistance of counsel.

¶ 24                    *Claim Regarding Postconviction Counsel*

¶ 25     Alternatively, Akins argues that although postconviction counsel filed a certificate under Illinois Supreme Court Rule 651(c) at the second stage, he provided unreasonable assistance by failing to call witnesses that would have corroborated his claim. The State argues that postconviction counsel did not provide unreasonable assistance because his decision not to call witnesses was trial strategy, and, in any event, the witnesses would not have contributed original testimony.

¶ 26     There is no constitutional right to assistance of counsel during postconviction proceedings. *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). In Illinois, a criminal defendant is guaranteed only he level of assistance provided by the Act. *Id.* According to Rule 651(c), postconviction counsel must consult with petitioner, examine the record to shape the petitioner's claims, and make amendments to the petition to adequately present claims. Ill. Sup. Ct. R. 651(c). This rule applies to duties at the second stage. *People v. Knight*, 2020 IL App (1st) 170550, ¶¶ 38-39. The only

standard applicable to a third stage evidentiary hearing "is that of general reasonableness." *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 29. Our review is *do novo. People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 27    The test for ineffective assistance in *Strickland* does not apply to claims about postconviction counsel, but we can use *Strickland* as a comparison. *Pabello*, 2019 IL App (2d) at ¶ 37. If postconviction counsel's assistance satisfies *Strickland*, by definition, we cannot deem it unreasonable under the Act because *Strickland* incorporates a higher standard. *People v. Hotwanger*, 2015 IL App (5th) 130525, ¶37. Akins claims that the failure to call witnesses amounted to a failure to "present his claims in their proper legal form." All the authorities Akins cites involve second stage dismissals of postconviction claims. *See People v. Slaughter*, 2012 IL App (1st) 092523, ¶ 18; *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 17; *People v. Suarez*, 224 Ill. 2d 37, 30 (2007).

¶ 28    Trial strategy includes an attorney's discretion in deciding to call witnesses. See *Hotwanger*, 2015 IL App (5th) at ¶ 48. Accordingly, matters of trial strategy are "generally immune from claims of ineffective assistance." *People v. Dupree*, 2018 IL 122307, ¶ 44. Similarly, errors in trial strategy cannot constitute ineffective assistance unless counsel "entirely failed to conduct any meaningful adversarial testing," a claim Akins has not raised. See *People v. Custer*, 2020 IL App (3d) 160202-B, ¶ 40.

¶ 29    To show his postconviction counsel provided unreasonable assistance, Akins cites *People v. Ross*, 2015 IL App (3d) 130077, *overruled on other grounds by People v. Young*, 2018 IL 122598, ¶ 31. In *Ross*, postconviction counsel offered "no affidavits or depositions and offered no oral testimony or other evidence to support Ross's claim of ineffective assistance of counsel." *Id.*

at ¶ 17. Here, counsel provided affidavits, cross-examined the State's witnesses, and made forceful arguments before and after the hearing.

¶ 30    The court in *Ross* emphasized that postconviction counsel "failed to present *any* evidence." *Id.* at ¶ 20. The Act allows the trial court to receive evidence at an evidentiary hearing in the form of "affidavits, depositions, oral testimony, or other evidence." 725 ILCS 5/122-6. As stated in *Ross*, counsel's reasonable assistance at an evidentiary hearing asks whether counsel put the relevant evidence "before the trial court." See *id.* at ¶ 17. Because the trial court had Akins's testimony and the affidavits—both proper evidence for the trial court to consider—Akins's postconviction counsel put evidence before the trial court to support Akins's claims. Nothing in the record shows postconviction counsel's performance was unreasonable.

¶ 31    Affirmed.